UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80427-CIV-ROSENBERG
     (15-80210-CR-ROSENBERG)
MAGISTRATE JUDGE P.A. WHITE

CRISTIAN MARIANO PARDO,

    Movant,

vs.                                          REPORT OF
                                        MAGISTRATE JUDGE

UNITED STATES OF AMERICA,

    Respondent.
_____/

## I. BACKGROUND

### A. Factual Background

The following facts come from the factual proffer that movant executed in connection with his plea agreement. Cr-DE#40 at 9-12.

Movant operated a number of fraudulent businesses in concert with his codefendant ("the defendants"). Id. at 9. Between January 2010 and May 2015, the defendants operated a call center in Argentina that contacted Spanish-speaking U.S. Postal customers in the United States and coerced them into sending money through certain fraudulent practices. Id.

The defendants directed that C.O.D. parcels be mailed to Spanish-speaking victims throughout the United States. Id. However, the victims had not placed an order for any items. Id. From the call center in Argentina, "telemarketers" would call the victims. Id. One telemarketing script that movant sent via email

1

included the following false statements: (1) the telemarketer was
an attorney with U.S. Federal Courts; (2) the victim failed to
pay for merchandise that he/she previously ordered; and (3)
unless the victim paid the demanded amount (usually $500), a
federal judge would be advised of the failure to pay and
additional court costs of $2,000 would be assessed against
him/her. Id. Further, the script directed the telemarketer to
tell the victim that the telemarketer had a recording of the
victim ordering the merchandise and would play it in court for
the judge if he/she did not render payment. Id.

After receiving these threatening phone calls, the victims
would go to the U.S. Post Office to purchase money orders to pay
the amount requested. Id. at 10. They did this to avoid being
sued or arrested. Id. The parcels that the victims received
contained small jars of cream or other nominal items valued at
far less than the $500 demanded. Id.

## B. **Procedural Background**

### 1. Indictment and Change-of-Plea Hearing

On November 19, 2015, a federal grand jury indicted movant
and his codefendant with: (1) one count of conspiracy to commit
mail fraud, in violation of 18 U.S.C. §§ 1349, 2326; and (2)
fourteen counts of mail fraud, in violation of 18 U.S.C. §§ 1341,
2326 and 2.

On March 25, 2016 and April 1, 2016, movant, defense
counsel, and AUSA Jorgensen executed a plea agreement. Cr-DE#40.
Movant agreed to plead guilty to the following counts: (1) Count
1--conspiracy to commit mail fraud, in violation of 18 U.S.C. §

2

1349; and (2) Count 16--mail fraud, in violation of 18 U.S.C. § 1341. Id. at 1. In exchange, the United States agreed to dismiss any remaining counts after sentencing. Id.

The plea agreement also contains an appeal waiver. Id. at 5-6. The appeal waiver provides that movant agrees to waive all rights under 18 U.S.C. § 3742, "unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the Court establishes at sentencing." Id. at 6. The waiver further provides: "The defendant understands that, although defendant will be sentenced in conformity with the Sentencing Guidelines, by this agreement defendant waives the right to appeal the sentence on the basis that the sentence is the result of an incorrect application of the Sentence Guidelines." Id. The waiver also states that movant acknowledges that he discussed the waiver with defense counsel. Id.

On April 1, 2018, a change-of-plea hearing took place. Cv-DE#12-3. A Spanish interpreter was present. Id. at 1. At the outset, the court told movant that no one wanted him to do anything that he did not understand. Id. at 3. Therefore, the court told him to tell it if he did not understand something or wanted to talk to his lawyer. Id. He said that he understood. Id.

Movant was sworn in. Id. at 4. Movant stated that he studied law in college, was not under the influence of alcohol or drugs, and had not taken any medication in the past 24 hours. Id. at 7-8.

The court reviewed the plea agreement with movant. Id. at 9. He stated that he discussed it with his lawyer and understood it.

3

Id. at 9-10. The court also reviewed the factual basis underlying the plea agreement. Id. at 10, 27. Movant stated that it was a "true and accurate description of the relevant offense conduct in this case." Id.; see also id. at 28.

Additionally, the court discussed movant's appeal rights and the appeal waiver. Id. at 20-24. Movant stated that he did not have any questions about his appeal waiver. Id. at 24-25. He also stated that he discussed it with his attorney and was satisfied with his advice. Id. at 25. He added that no one had promised him anything or threatened him in any way to give up his right to appeal. Id.

Moreover, movant stated that: (1) no one promised him anything other than what was in the plea agreement to get him to plead guilty; (2) no one had threatened him to get him to plead guilty; and (3) he was pleading guilty freely and voluntarily because he was in fact guilty. Id. at 33-34.

Movant pleaded guilty. Id. at 35-36. The court accepted his guilty plea. Id.

## 2. The PSI

Movant's base offense level was 7. PSI ¶ 36. Under USSG § 2B1.1(b)(1)(H), he received a 14-level increase due to the loss of more than $550,000 but less than $1.5 million. PSI ¶ 37. Further, he received a two-level increase because the offense involved 10 or more victims. PSI ¶ 38. He also received a two-level increase because he relocated a fraudulent scheme to another jurisdiction to evade law enforcement. PSI ¶ 39.

4

The PSI recommended two additional enhancements. One, a three-level enhancement based on his selection of any victim because of the "perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of [the victim][.]" USSG § 3A1.1(a); PSI ¶ 40. Two, a four-level role enhancement under USSG § 3B1.1(a). PSI ¶ 41.

With a three-level reduction for acceptance of responsibility, movant's total offense level was 29. PSI ¶ 47. Movant had no convictions, so his criminal history category was I. PSI ¶ 50. Hence, movant's advisory guideline range was 87 to 108 months in prison. PSI ¶ 87.

Movant's counsel objected to the PSI. Cr-DE#44. He contended: "At no time during this conspiracy [did] the Defendant specifically target[] Spanish speaking individuals due to their race, national origin, gender or ethnicity." Id. at 1. "The only reason . . . [was] due to the simple reason that [] Defendant does not speak English. . . . Targeting individuals due to communication skills or language barriers is not one of the enumerated reasons . . . for a 3 level enhancement to apply pursuant to § 3A1.1." Id.

Movant's counsel also contended that a two-level role enhancement under USSG § 3B1.1(c) was proper, not a four-level enhancement USSG § 3B1.1(a). Id. He reasoned that movant was only a supervisor in the conspiracy as opposed to an organizer or leader. Id. at 1-2. This was because, he added, movant's codefendant supervised him. Id. at 2.

An addendum to the PSI was issued. Regarding the first objection, the United States did not oppose the removal of the

four-level enhancement under USSG § 3A1.1(a). PSI Addendum at 1.
Furthermore, the United States agreed with defense counsel that
only a two-level increase was warranted based on movant's role in
the offense. USSG § 3B1.1(c).

### 3. <u>Sentencing Hearing</u>

On June 9, 2016, the district court held a sentencing
hearing. Cv-DE#12-4. A Spanish interpreter was present. <u>Id.</u> at 7.

The court adopted the parties' recommendation to remove the
three-level hate-crime enhancement under USSG § 3A1.1. <u>Id.</u> at 5.
Further, the court adopted the parties' revised recommendation
for a three-level enhancement based on movant's role in the
offense. <u>Id.</u>; USSG § 3B.1(b). Accordingly, with a lowered offense
level of 25 and a criminal history category of I, the revised
guideline range was 57 to 71 months in prison. <u>Id.</u> at 4-5.

Movant's counsel argued for a sentence at the low end of the
guidelines. <u>Id.</u> at 10, 14. The government, by comparison, asked
for a guidelines sentence of 57 to 71 months' imprisonment. <u>Id.</u>
at 14. After listening to the statements of the parties, the
court imposed a total term of 57 months in prison. <u>Id.</u> at 14-16.
This term consisted of 57 months as to each of counts 1 and 16,
to run concurrently. Cv-DE#12-5 at 2. Furthermore, the court
ordered restitution in the amount of $731,732. <u>Id.</u> at 5.

### 4. <u>No Direct Appeal</u>

The court entered its judgment on June 14, 2016. <u>Id.</u> at 1.
Movant did not appeal.

### 5. The Instant § 2255 Case

Movant filed his petition on March 28, 2018. Cv-DE#1 at 12.
Movant raises two claims. The first is that defense counsel
ineffectively told him not to appeal because the government would
not file a Rule 35(b) motion on his behalf if he did. Id. at 4.
Second, movant contends that his counsel ineffectively failed to
challenge the district court's alleged imposition of a four-level
role increase under USSG § 3B1.1(a). Id. at 5.

Contemporaneously, movant filed a supporting memorandum. Cv-
DE#3 at 13. Regarding claim one, he states: "[A]t the moment of
the sentence hearing [sic], defense counsel advise[d] his
defendant to waive the right to appeal because he . . . had an
agreement with the U.S. Attorney to file a Rule 35 in 1 year, and
then [movant] will be release[d] [immediately]." Id. at 3.
Similarly, he states: "[D]efense counsel . . . [denied] the right
to appeal of his client, because he had an agreement with [the]
government[] that [] three years later[] [movant] [would] be
free[] because [of] a [R]ule 35." Id. at 4.

Additionally, movant states that, "[a]t the end of 2017," he
and his family started to call defense counsel to ask when the
government was going to file the Rule 35(b) motion. Id. However,
despite their numerous calls, defense counsel would hang up on
them and his law firm said that he was no longer "working with
them." Id. at 4-5. For the same reasons, movant contends that he
is entitled to equitable tolling to § 2255's statute of
limitations. See id. at 5.[1]

---

[1] Movant's memorandum in support contains a boilerplate reference to Roe
v. Flores-Ortega, 528 U.S. 470 (2000). Id. at 3-4. However, movant does not
assert that he specifically requested defense counsel to file an appeal. Id.
at 6. Nor does he so assert in his form motion. Cv-DE#1 at 5.

Regarding the second claim, movant contends that
"[codefendant] Mr. Barca was the person who organized, planned
and exercised decision-making authority." Id. at 6. Likewise, he
states that "Mr. Barca operated several companies by himself or
his family, without the management or administration of
[movant][.]" Id. at 7. He further states that it "is clear that
[movant] all the time was following the orders and instructions
that Mr. Barca told him." Id. at 8. Also, he states that Mr.
Barca "controlled" him and that he "never [earned] the money that
Mr. Barca [earned]." Id. Moreover, movant states that he helped
Barca create only one company. Id. at 9. Finally, he states that
there was not evidence that he "was [an] organizer or leader of a
criminal activity that involved five or more participants
[because] the call center activities [were] done in Buenos
Aires." Id. Accordingly, he concludes, he improperly received a
four-level role increase under USSG § 3B1.1(a). See id. at 10.[2]

Initially, the undersigned improvidentially set the case in
for an evidentiary hearing on the ground that movant argued that
his attorney ineffectively failed to file a requested notice of

---

[2] Movant makes another contention in his supporting memorandum, which is
not fully clear. He appears to contend that his plea agreement and/or the
government represented before sentencing that he faced a guidelines sentence
or range of 41 months. Cv-DE#3 at 2-3. However, the plea agreement contains no
such promise or representation. Cr-DE#40 at 3. Furthermore, the plea agreement
states that the government made him no "agreements, promises, representations,
or understandings" that were not contained in it. Id. at 7. Likewise, during
the plea colloquy, movant stated that no one made him any promises other than
those contained in the plea agreement. Cv-DE#12-3 at 33. Therefore, the record
contradicts the apparent assertion that the government and/or the plea
agreement promised or represented that movant faced a guidelines sentence or
range of 41 months. Indeed, movant appears to concede in his supplemental
declaration that the government made no such promise or representation. Cv-
DE#16 at 1 ("The only inaccuracy in [movant's] § 2255 motion is the fact that
I was under the belief that the Government had increased my guidelines based
on my debriefing instead of the PSI recommending my leadership role. I learned
of this when I was appointed counsel for this case."). Accordingly, although
movant did not raise this apparent assertion as a claim, it would have failed
had he done so.

appeal. Cv-DE#6.

Subsequently, the undersigned expressed concern about a recent rash of § 2255 motions from inmates asserting the same factually unsupported, boilerplate claim that their attorneys ineffectively failed to file a requested appeal. Cv-DE#13. Many of these inmates, like movant, are housed at D. Ray James Correctional Institution. Id. at 1-2. Therefore, the undersigned ordered movant to file a supplemental declaration and documents to support his supposed claim that his attorney ineffectively failed to file a requested appeal. See generally id.

On July 11, 2018, movant, through appointed counsel, filed a supplemental declaration. Cv-DE#16. Therein, movant further clarifies that his first claim is not that defense counsel failed to file a requested direct appeal. Rather, he contends: "My attorney visited me in [] jail one month before my sentencing date and he informed me not to appeal because he had an agreement with the Government where they would reduce my sentence between 25%-50%. Due to this we never spoke about my appellate rights and he never saw me after my sentencing date." Id. at 1-2.

Notably, the assertion that defense counsel made this statement one month before sentencing contradicts movant's assertion in his supporting memorandum that defense counsel made this statement "[a]t the moment of the [sentencing] hearing." Compare Cv-DE#16 at 1-2, with Cv-DE#3 at 3 (emphasis added).

This inconsistency is disconcerting for additional reasons. Movant states in his supplemental declaration that, although another inmate prepared his § 2255 motion and supporting memorandum for him and read it to him before he signed it, he did

9

not know that he was signing it under the penalty of perjury. Cv-DE#16 at 1. In his defense, movant states that the "only inaccuracy" in the supporting memorandum was the fact that he mistakenly believed that the government had misrepresented the guidelines sentence or range as being 41 months during a debriefing. See id. (emphasis added). However, as just shown, movant's sworn declaration that defense counsel told him one month before sentencing not to appeal because the government was going to file a Rule 35(b) motion contradicts his assertion that defense counsel made this statement "at the moment" of sentencing. Therefore, the record shows that the government's alleged misrepresentation of his guidelines sentence or range as 41 months is not the "only inaccuracy" in the supporting memorandum.

These observations raise questions as to the veracity of movant's factual assertions. However, the undersigned refrains from making a credibility determination. Rather, the undersigned will proceed on movant's sworn statement that defense counsel told him not to file an appeal one month before sentencing and disregard his inconsistent assertion that defense counsel made this statement "at the moment" of sentencing. Cf. Rule 2(b)(5), Rules Governing Section 2255 Proceedings (providing that § 2255 motions must be signed under the penalty of perjury).

In response to movant's supplemental filing, as well as upon re-review of the record, it is clear that an evidentiary hearing is not necessary. As discussed below, movant's first claim is not that his attorney failed to file a requested notice of appeal. And his true claim, whose resolution does not turn on disputed material facts, is manifestly meritless. Likewise, movant's second claim is frivolous and contradicted by the record.

### III. **ANALYSIS**

#### A. **General Principles--Ineffective Assistance**

To establish a claim of ineffective assistance of counsel, movant must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To prove deficiency, he must show that his attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. Id. at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

To prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.[3]

#### B. **Claim 1**

Movant contends that, one month before sentencing, defense counsel told him that he had an agreement with the government to file a Rule 35(b) motion, which would result in a sentence reduction of 25 to 50 percent. Further, he contends that counsel

---

[3] Movant has the burden of proof on his ineffectiveness claim, Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1256 (11th Cir. 2012), as well as the burden of proof under § 2255, Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017) (citing cases).

did not further consult with him about an appeal.

Normally, "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). "As to the second prong of the *Strickland* test, the *Flores-Ortega* Court held that the failure to file an appeal that the defendant wanted filed denies the defendant his constitutional right to counsel at a critical stage." Id. at 792 (citing Flores-Ortega, 528 U.S. at 483). "In such cases, prejudice is presumed because rather than being denied the opportunity for a fair proceeding, the defendant is denied the opportunity for a proceeding at all." Id. (citing Flores-Ortega, 528 U.S. at 483).

Here, movant has not represented that he requested, specifically or otherwise, his attorney to appeal his judgment of conviction. Therefore, under *Flores-Ortega* and its progeny, he has not shown that defense counsel acted in a professionally unreasonable manner *per se*.

But this conclusion does not end the inquiry. Where, as here, "the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," courts next consider whether defense counsel "consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478. Consult under Flores-Ortega means "[]advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id.

12

However, counsel's failure to consult with the defendant about an appeal is not *per se* deficient either. Id. at 478, 480-81. "If counsel has not consulted with the defendant, the court must . . . ask . . . : whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. at 478.

In this regard, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

"Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. Courts "must [also] consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

Here, movant alleges that defense counsel failed to consult with him regarding an appeal. Although defense counsel apparently disputes this allegation, Cv-DE#18 at 2, the court will assume *arguendo* that defense counsel did not consult with movant regarding an appeal.

Thus, the question is whether (1) a rational defendant would want to appeal or (2) movant reasonably demonstrated to counsel that he was interested in appealing.

Here, movant does not meaningfully allege, must less adequately show, that he reasonably demonstrated to defense counsel that he was interested in appealing. Rather, he vaguely asserts that defense counsel visited him one month before sentencing and informed him not to appeal because he had an agreement with the government to file a Rule 35(b) motion. Cv-DE#16 at 1-2. Absent more supporting allegations regarding the content of these communications, this allegation does not reasonably support the inference that movant reasonably demonstrated to counsel that he was interested in appealing during this interaction. See Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (citation omitted) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)).

Movant has not provided any such supporting allegations. Indeed, the only other conceivably relevant allegation is that movant tried to contact counsel "at the end of 2017," but to no avail. Cv-DE#3 at 4-5. However, the district court entered its judgment of conviction on June 14, 2016. Thus, this conduct, which occurred approximately 1.5 years after the entry of judgment, does not plausibly suggest that movant reasonably demonstrated to defense counsel that he was interested in appealing. In short, movant has not adequately shown that he reasonably demonstrated to defense counsel that he wanted to appeal.

14

The next question is whether a rational defendant would have wanted to appeal. On this record, no rational defendant would have wanted to appeal. First, movant pleaded guilty, and the record reflects that his guilty plea was knowing and voluntary. See supra pp. 3-4. Even if movant did not want to end the judicial proceedings, his knowing and voluntary guilty plea still reduced the scope of potentially appealable issues. Flores-Ortega, 528 U.S. at 478; see also, e.g., Stano v. Dugger, 921 F.2d 1125, 1150 (11th Cir. 1991) (en banc) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea[.]" (citation omitted)). Furthermore, movant's plea agreement contained a broad appeal waiver and he has not alleged, much less shown, that its narrow exceptions apply. Cr-DE#40 at 6 (providing that movant waived all rights under 18 U.S.C. § 3742 to appeal any sentence imposed, unless the sentence exceeded the statutory maximum or was above the advisory guideline range established at sentencing). Likewise, movant received a bottommost guidelines sentence of 57 months in prison, which was well below the statutory maximum of 20 years for each count. Compare Cv-DE#12-5 at 2, with Cr-DE#40 at 3, and PSI ¶ 86. Accordingly, on this record, no rational defendant would have wanted to appeal. The Eleventh Circuit has so held under similar circumstances. See Devine v. United States, 520 F.3d 1286, 1288 (11th Cir. 2008) (per curiam); Otero v. United States, 499 F.3d 1267, 1270-71 (11th Cir. 2007).

For these reasons, movant's first claim lacks merit. An evidentiary hearing is not necessary on this claim for the stated reasons. In short, it is "patently frivolous," "based upon unsupported generalizations," and/or "affirmatively contradicted by the record." See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

## C. **Claim 2**

The essence of movant's second claim is that he improperly received a four-level role increase to his offense level because he was not an organizer or leader of a large-scale criminal activity. <u>See</u> Cv-DE#3 at 6-10. He further contends that counsel ineffectively failed to object to the alleged four-level increase. Cv-DE#1 at 5.

However, as noted, movant received a three-level role increase under USSG § 3B1.1(b), not a four-level increase under USSG § 3B1.1(a). Cv-DE#12-4 at 5. Thus, because there was no increase under § 3B1.1(a), counsel obviously could not have deficiently failed to object to this cipher.

Furthermore, claim 2 would fail even if the court liberally construed it to allege that counsel ineffectively failed to object to the three-level increase under USSG § 3B1.1(b). As the government aptly notes,

As noted in the factual basis for change of plea and PSI, Movant played an integral role during the course of this conspiracy. Movant emailed scripts to be used by the telemarketers to induce hundreds of victims to pay money. These scripts included numerous false claims, including that the caller was an attorney employed by the U. S. federal court, and that if the victim did not pay the $500 demanded, additional court costs of $2,000 would be assessed against the victim. The scheme involved the collection of hundreds of deposits of money orders and personal checks from the victims. Movant agreed in his factual proffer that the

16

losses in the case exceeded $1 million, and he agreed at sentencing to pay restitution of over $700,000. Movant worked with his co-defendant and the cooperating witness CW-1 to set up bank accounts that were used to collect the thousands in payments from the victims. It is clear from the factual proffer to which Movant agreed that his role was that of manager or supervisor and that the fraudulent conduct was both extensive and involved more than five participants.

Cv-DE#12 at 17-18 (citations omitted); see also Cr-DE#40 at 9-12 (factual proffer); USSG § 3B1.1(b) (providing for a three-level increase to the offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive").

### D. **Statute of Limitations**

The instant § 2255 motion is also untimely. Pertinently, 28 U.S.C. § 2255(f) provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final[.] . . .

Here, the district court entered movant's judgment of conviction on June 14, 2016. Cv-DE#12-5 at 2. Movant did not appeal. Thus, for § 2255(f)(1) purposes, the judgment became

17

final fourteen days later on June 28, 2016. See Ramirez v. United States, 146 F. App'x 325, 326 (11th Cir. 2005) (per curiam) (citing Fed. R. App. P. 4(b)(1)(A)(i), (6)). However, movant did not file the instant motion until March 28, 2018. Cv-DE#1 at 12. Therefore, because movant filed his motion one year and nine months after it became final, it is untimely.

Movant requests equitable tolling. As with claim 1, he contends that his attorney informed him not to file an appeal because the government was going to file a Rule 35(b) motion in the future. Cv-DE#1 at 10.

Section 2255 is subject to equitable tolling. Akins v. United States, 204 F.3d 1086, 1089 (11th Cir. 2000). But equitable tolling is proper only if the movant shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Fla., 560 U.S. 631, 649 (2010) (citation omitted). "[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (citation omitted); see also Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1209 (11th Cir. 2014) ("[T]he allegations supporting equitable tolling must be specific and not conclusory." (citation omitted)).

Here, movant's assertion that defense counsel told him not to file an appeal because the government was going to file a Rule 35(b) motion is too unspecific and conclusory to warrant equitable tolling. Movant has not alleged, much less shown, how this ostensible misadvice constitutes an extraordinary circumstance that stood in his way and preventing him from

18

timelier filing his motion. Nor has he alleged, much less
adequately so, that he pursued his rights diligently.
Accordingly, the motion is untimely.[4]

## IV. **EVIDENTIARY HEARING**

An evidentiary hearing is not appropriate in this case.
"[T]he motion and the files and records of the case conclusively
show that [movant] is entitled to no relief[.]" See 28 U.S.C. §
2255(b). The preceding analysis conclusively shows that movant's
claims are "patently frivolous, "based upon unsupported
generalizations," and/or "affirmatively contradicted by the
record." See Holmes, 876 F.2d at 1553.

Movant has not adequately "allege[d] facts which, if true,
would entitle him to [§ 2255] relief." Stano v. Dugger, 901 F.2d

---

[4] An attorney's advice not to appeal lest the government not file a Rule
35(b) motion is not necessarily deficient. Attorneys routinely advise their
clients that filing a direct appeal is inconsistent with cooperating with the
government. See, e.g., Weeks v. United States, 482 F. App'x 499, 501 (11th
Cir. 2012) (per curiam); United States v. Smith, 386 F. App'x 889, 890 (11th
Cir. 2010) (per curiam); Palacios v. United States, No. 09-21160-CIV, 2012 WL
5387359, at *12 (S.D. Fla. Nov. 1, 2012); Ross v. United States, No.
8:08-CR-218-T-27TGW, 2010 WL 5071012, at *5 (M.D. Fla. Dec. 7, 2010). Such
advice would especially not be unreasonable where, as here, the record
reflects that an appeal would have been futile. True, the government has near-
total discretion to file a Rule 35(b) motion. See Wade v. United States, 504
U.S. 181, 185 (1992). Therefore, it would potentially be deficient for an
attorney to guarantee his client that the government was going to file the
motion. However, if the defendant is cooperating with the government in the
hope that it will file a Rule 35(b) motion, and if the record reflects that an
appeal would be futile, it may be reasonable to advise a client not to appeal
lest doing so eliminate any possibility that the government will file a Rule
35(b) motion.

Accordingly, an allegation that the government did not file a Rule 35(b)
motion even though counsel told the defendant not to appeal lest the
government not file such a motion, at the very most, sounds in negligence.
However, "an attorney's negligence, even gross negligence, or misunderstanding
about the law is not by itself a serious instance of attorney misconduct for
equitable tolling purposes[.] . . ." Cadet v. Fla. Dep't of Corr., 853 F.3d
1216, 1237 (11th Cir. 2017). These observations, which are not essential to
the undersigned's analysis, bolster his conclusion that equitable tolling is
not proper here.

898, 899 (11th Cir. 1990) (en banc) (citations omitted). Rather, as discussed above, his claims are manifestly meritless and contradicted by the record. Furthermore, their resolution does meaningfully turn on disputed material facts. See <u>Turner v. Crosby</u>, 339 F.3d 1247, 1274 (11th Cir. 2003) (evidentiary hearing may not be necessary "[w]here the material facts are [not] in dispute[]"). Accordingly, on the record as a whole, an evidentiary hearing is not necessary.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." <u>Id.</u> "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." <u>Id.</u> "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2255 Proceedings.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a movant's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484

(2000)). By contrast, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Here, in view of the entire record, the court denies a certificate of appealability. If movant disagrees, he may so argue in any objections filed with the district court.

## VI. **RECOMMENDATIONS**

Based on the foregoing, it is recommended:

1. That movant's § 2255 motion (Cv-DE#1) be **DENIED;**

2. That no certificate of appealability issue; and

3. That judgment be entered and the case closed.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 148-53 (1985); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 31<u>st</u> day of July, 2018.


_____
UNITED STATES MAGISTRATE JUDGE

Copies furnished:

Alfredo A. Izaguirre
Alfredo Izaguirre PA
338 Minorca Avenue
Coral Gables, FL 33134
305-442-0425
Fax: 442-0429
Email: alfredo@izaguirrelaw.com

Lauren Elizabeth Jorgensen
U. S. Attorney
500 S. Australian Avenue
West Palm Beach, FL 33401
561-820-8711
Email: lauren.jorgensen@usdoj.gov

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov